**UNITED STATES JUDICIAL PANEL**
**on**
**MULTIDISTRICT LITIGATION**

**IN RE: NEVRO CORPORATION SPINAL CORD STIMULATOR PRODUCTS LIABILITY LITIGATION** MDL No. 3195

## TRANSFER ORDER

**Before the Panel**:* Plaintiffs in eight actions move under 28 U.S.C. § 1407 to centralize this litigation involving allegedly defective implantable spinal cord stimulator devices in the Central District of California or, alternatively, the Northern District of California. This litigation consists of seventeen actions pending in six districts, as listed on Schedule A. The parties have notified the Panel of six additional related actions pending in five districts.[1] Plaintiffs in one action and two potential tag-along actions support centralization in the Central District of California. Defendants Nevro LLC, f/k/a Nevro Corporation, and Globus Medical, Inc. (together, Nevro) oppose centralization or, alternatively, support the Central District of California as the transferee district. Defendant the United States Food and Drug Administration (the FDA) takes no position on centralization and states that the claims against it should be dismissed.

In the actions before the Panel, plaintiffs allege that they suffered injuries arising from the implantation and use of a spinal cord stimulator (SCS) manufactured by Nevro. They allege that the FDA granted Premarket Approval (PMA) of Nevro's SCS not based on Nevro-sponsored clinical trials but, instead, based on published literature related to similar systems manufactured by other companies. Since the original PMA was approved, plaintiffs assert that Nevro has introduced nearly 250 new SCS devices incorporating significant modifications under supplements to the original PMA. They allege that Nevro introduced these major cumulative design changes through successive PMA supplements to avoid the clinical evaluation required for new PMA applications. They contend that Nevro failed to disclose the material changes made to its devices to patients, physicians, or regulators. They further allege that Nevro failed to comply with critical system regulation and current good manufacturing practice obligations, adverse-event reporting duties, labeling and warning obligations, and post-market surveillance duties. All but one plaintiff alleges that Nevro sales representatives engaged in the unauthorized practice of medicine by, *e.g.*, actively participating in the programming and reprogramming of implanted devices, adjusting the physical positioning of leads implanted in patients, and directing patients to adjust the settings of

---

* Judge M. Casey Rodgers took no part in the decision of this matter.

[1] These actions and any other related actions are potential tag-along actions. *See* Panel Rules 1.1(i), 7.1, and 7.2.

their devices. Plaintiffs in all actions allege that Nevro sales representatives are trained to make false and misleading statements to patients and healthcare providers to induce them to agree to implantation or to keeping the device implanted.

Plaintiffs in nine actions and one potential tag-along action include a claim against the FDA under the Administrative Procedures Act (APA). One of these plaintiffs (District of Maryland *DiToto*) alleges the FDA's approval of Nevro's SCS PMA supplements failed to meet statutory requirements and was arbitrary and capricious, and he seeks a declaration that the approval was deficient and, therefore, Nevro is not entitled to preemption.[2] Plaintiffs in the other eight actions seek "only to compel completion of a discrete, nondiscretionary administrative processing duty after receipt of mandatory safety submissions and does not request the Court to evaluate, modify, or invalidate any approval decision, scientific judgment, or enforcement determination…. Plaintiffs each seek relief limited to unreasonable delay in processing mandatory safety submissions and does not request the Court to direct any particular regulatory outcome."

We previously considered a motion to centralize similar actions involving SCS devices manufactured by Abbott Laboratories and Boston Scientific Corporation (some parties argued that the multi-defendant proposed MDL be further expanded to include SCS devices manufactured by Nevro). We declined to create an industry-wide MDL, finding: "While plaintiffs allege similar conduct on the part of each manufacturer, they do not allege the manufacturers acted in concert. Each manufacturer has its own line of SCS devices, each of which have their own regulatory histories. Discovery will not overlap concerning each manufacturer's conduct. While the FDA is common to many of the actions, the facts as to the approval of each manufacturer's products again will differ." *In re Abbott Labs. & Boston Scientific Corp. Spinal Cord Stimulator Prods. Liab. Litig.*, MDL No. 3181, __ F. Supp. 3d __, 2026 WL 1659301, at *2 (J.P.M.L. June 5, 2026). We found that creation of an MDL comprised of the actions against Boston Scientific, however, was appropriate. We determined the actions shared "factual questions arising from allegations that Boston Scientific failed to comply with regulatory requirements for Class III medical devices by (1) seeking PMA approval of its SCS devices based on published literature related to SCS devices manufactured by other companies, rather than offering clinical studies demonstrating their safety and efficacy; and (2) abusing the PMA supplement process by introducing new SCS devices under successive PMA supplements with significant modifications to avoid heightened scrutiny and clinical evaluation." *Id*. at *3. While the actions now before the Panel naming Nevro are similar to the actions we centralized that name Boston Scientific, that is not the end of our inquiry. *See In re Covidien Hernia Mesh Prods. Liab. Litig.*, 481 F. Supp. 3d 1348, 1349 (J.P.M.L. 2020) ("[T]he Panel makes each of its decisions based on the circumstances presented by a particular litigation

---

2 The potential tag-along action (Western District of Missouri *Rivera*) includes similar allegations.

at the time.”).

On the basis of the papers filed and the hearing session held, we find that these actions involve common questions of fact and that centralization in the Northern District of California will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. All plaintiffs allege they were implanted with an Nevro SCS device and were injured. The actions share questions of fact arising from allegations that Nevro failed to comply with regulatory requirements by misusing the PMA supplement process to introduce successive new SCS devices with significant modifications to avoid heightened scrutiny and clinical evaluation requirements that would otherwise apply to novel devices. They contend that Nevro failed to warn about, and concealed the existence of, known risks associated with its SCS devices. Additionally, almost all actions share factual questions concerning whether Nevro sales representatives engaged in the unlicensed practice of medicine, and the propriety of the sales representatives’ training and statements they have made to patients and healthcare providers concerning the SCS devices. Centralization under Section 1407 will eliminate duplicative discovery; streamline briefing and prevent inconsistent pretrial rulings, particularly concerning Nevro’s preemption defenses; and conserve the resources of the parties, their counsel, and the judiciary.

In opposing centralization, Nevro argues that plaintiffs do not allege a common product defect and allege an array of injuries. Of course, “almost all injury litigation involves questions of causation that are case- and plaintiff-specific. Such differences have not been an impediment to centralization in the past.” *See In re Wright Med. Tech., Inc., Conserve Hip Implant Prods. Liab. Litig.*, 844 F. Supp. 2d 1371, 1372 (J.P.M.L. 2012). Movants argue that the injuries can be grouped into three underlying causes: (a) physical injuries caused by the electrical impulses acting on the nerves resulting in various specific injuries based upon the specific nerves affected (shocks, incontinence, lower extremity weakness, etc.); (b) physical injuries caused by defective leads (*e.g.*, burning, lead migration); and (c) failure of the device to provide pain relief. We have “rejected the argument that products liability actions must allege identical injuries to warrant centralization.” *In re Cook Med., Inc., IVC Filters Mktg., Sales Practices & Prods. Liab. Litig.*, 53 F. Supp. 3d 1379, 1381 (J.P.M.L. 2014). This is particularly true where the actions share additional significant common factual issues, as they do here. *See In re Boston Scientific*, 2026 WL 1659301, at *4 (“Given the overlap in allegations concerning the PMA approval process, among other factual questions about the performance of these Boston Scientific products, we find there are sufficient common factual questions among the actions to warrant centralization.”). Here, there are additional common factual questions regarding whether Nevro failed to comply with regulatory requirements, whether Nevro sales representatives were trained to make false and/or misleading statements to patients and/or healthcare providers, and whether Nevro’s conduct constitutes the unauthorized practice of medicine. Given the significant overlap in these allegations and the overlap in threshold proceedings regarding preemption, we find centralization will provide substantial efficiencies, regardless of the diffuse nature of the injuries and any differences in

alleged defects.

Nevro also argues that three of the actions involve unique allegations, and they should not be included. Nevro argues that the District of Maryland *DiToto* action is the only one seeking to challenge the FDA's approval of Nevro's PMA supplements, and two actions concern Nevro's HFX iQ and uniquely assert design defect claims. We are not persuaded that these minor differences warrant exclusion of these cases from centralized proceedings. Furthermore, eight other actions on the motion name the FDA and seek declaratory and injunctive relief similar to that sought in *DiToto*.[3]

Nevro also argues that *DiToto* is too procedurally advanced to benefit from centralization, and that the District of New Mexico *Yusnukis* action has been dismissed and cannot be transferred. The *Yusnukis* plaintiff has moved for leave to amend his complaint, and the action remains open while that request is pending. The court in *DiToto* has ruled on a motion to dismiss, and it appears that discovery has begun. At oral argument, movants' counsel stated that discovery had not yet begun, while Nevro argued that it was well advanced. We are not persuaded that the action is so far advanced that it would not benefit from centralized proceedings. Should the transferee judge find, after close scrutiny, that any actions or claims are unique and would not benefit from centralized proceedings, he can suggest Section 1407 remand, which may be accomplished with a minimum of delay. *See* Panel Rules. 10.1-10.3.

Finally, Nevro argues that centralization is unnecessary because twelve of the seventeen actions on the motion already are pending before the same judge, and the outlying actions can be informally coordinated or transferred under Section 1404, if necessary. There are now at least six firms representing plaintiffs in 23 actions in ten different districts. The prospect of all parties agreeing to Section 1404 transfer to a single district does not appear to be reasonable, and the motion practice alone would be inefficient. While informal coordination of duplicative discovery may be workable here, centralization allows for streamlined briefing on overlapping motions practice, particularly with regard to the issue of preemption. While we are typically "disinclined to take into account the mere possibility of future filings in [its] centralization calculus," *In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017), movants' counsel states that it represents 300 potential plaintiffs, and stresses that more than 30 of these potential plaintiffs would already have filed actions against Nevro but for counsel's tolling

---

[3] *See, e.g.*, N.D. California *Lutke* Compl. at ¶ 183 (requesting the court to (1) declare that the FDA's failure to require a new PMA for Nevro's SCS systems violated the APA; (2) declare that the FDA's approval and ongoing allowance of materially altered devices under the PMA without new safety review is arbitrary, capricious, and contrary to law; and (3) require the FDA to initiate enforcement proceedings or PMA reevaluation). Since the close of briefing, the Panel has been notified of a potential tag-along action filed in the Western District of Missouri that includes claims against the FDA similar to those in *DiToto*.

agreement with Nevro. These unique circumstances have persuaded us that it is likely that more actions will be filed.

We are not persuaded, as several parties suggest, that the litigation should be assigned to the same judge in the Central District of California who is presiding over the MDL involving Boston Scientific SCS devices. Little efficiency will be gained by placing SCS device MDLs against multiple manufacturers before one judge. Though there are two potential tag-along actions now pending there, those cases already are a part of the Boston Scientific SCS MDL, and the litigation against Nevro does not otherwise have a connection to the district. While some potential tag-along plaintiffs argue that there will be actions naming multiple manufacturer defendants, we are not convinced that these cases will be sufficiently numerous to justify creating what amounts to an industry-wide MDL.

We find that the Northern District of California is the most appropriate transferee district for this litigation. Nevro is headquartered in this district and, therefore, relevant documents and witnesses likely will be found there. Twelve actions and one potential tag-along action are pending in this district, and all twelve actions on the motion are before Judge Haywood S. Gilliam, Jr., an experienced transferee judge. We are confident that Judge Gilliam will steer this litigation on a prudent course.

IT IS THEREFORE ORDERED that the actions listed on Schedule A and pending outside the Northern District of California are transferred to the Northern District California and, with the consent of that court, assigned to the Honorable Haywood S. Gilliam, Jr., for coordinated or consolidated pretrial proceedings.

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

I hereby certify that the annexed instrument is a true and correct copy of the original on file in my office.

ATTEST:
MARK B. BUSBY
Clerk, U.S. District Court
Northern District of California

by: Jessie Mosley
Deputy Clerk

Date: 10/05/2026

PANEL ON MULTIDISTRICT LITIGATION

Karen K. Caldwell
Chair

Matthew F. Kennelly
Dale A. Kimball
Richard Seeborg

David C. Norton
Madeline Cox Arleo

**IN RE: NEVRO CORPORATION SPINAL CORD STIMULATOR PRODUCTS LIABILITY LITIGATION** MDL No. 3195

**SCHEDULE A**

Northern District of California

BROOKS v. NEVRO CORPORATION, ET AL., C.A. No. 4:26−01137
MANLEY v. NEVRO CORPORATION, ET AL., C.A. No. 4:26−02507
LUTKE v. NEVRO CORPORATION, ET AL., C.A. No. 4:26−02513
MOUNTEER v. NEVRO CORPORATION, ET AL., C.A. No. 4:26−02514
GOODING v. NEVRO CORPORATION, ET AL., C.A. No. 4:26−02515
TRIPP v. NEVRO CORPORATION, ET AL., C.A. No. 4:26−02518
RAMIREZ v. NEVRO CORPORATION, ET AL., C.A. No. 4:26−02519
HAWKEN v. NEVRO CORPORATION, ET AL., C.A. No. 4:26−02522
CLAY v. NEVRO CORPORATION, ET AL., C.A. No. 4:26−02896
SPRADLEY v. NEVRO CORPORATION, ET AL., C.A. No. 4:26−03180
HILL v. NEVRO CORPORATION, ET AL., C.A. No. 4:26−03956
POWELL v. NEVRO CORPORATION, ET AL., C.A. No. 4:26−04803

District of Colorado

FORD v. NEVRO CORP., ET AL., C.A. No. 1:26−02115

District of Maryland

DITOTO v. NEVRO CORPORATION, C.A. No. 1:25−01388

District of New Mexico

YUSNUKIS v. NEVRO CORPORATION, C.A. No. 1:24−00355

Northern District of Ohio

POSPISIL v. NEVRO CORPORATION, ET AL., C.A. No. 3:26−00980

District of South Carolina

LHAMON v. NEVRO CORPORATION, ET AL., C.A. No. 4:26−00867